Rayminh L. Ngo, Esq.
**HIGBEE & ASSOCIATES** (Of Counsel)
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(305) 764-9262
(714) 597-6729 facsimile
rngo@higbeeassociates.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MCGLYNN, | Case No. 1:23-cv-00078-JLS |
| Plaintiff, | |
| v. | MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT |
| THE REPORTER INC, d/b/a THE NIAGARA REPORTER and DOES 1-10, inclusive, | |
| Defendant(s). | |

Plaintiff DAVID MCGLYNN ("Plaintiff") submits this memorandum in support of Plaintiff's motion for entry of judgment by default against Defendant THE REPORTER, INC, d/b/a THE NIAGARA REPORTER ("Defendant"), pursuant to Fed. R. Civ. P. 55(b)(2) and Loc. R. Civ. P. 55(b). For the following reasons, Plaintiff requests that the Court grant this motion, waive an inquest and enter a judgment of default against Defendant for permanent injunctive relief, statutory damages, costs and postjudgment interests as requested below.

## I. STATEMENT OF FACTS

### A. Background

Plaintiff is a professional fine art and commercial freelance photographer residing in New York. Complaint (ECF Doc. 1), ¶¶5, 8. His works have been shown at group and solo shows at

1

various venues, including the Alternative Museum, Queens Museum, Hudson River Museum, Luring Augustine Gallery, the Neuberger Museum and Broadway Windows. *Id.* at ¶10. His works have also been featured in major publications such as the *New York Post*, *The New York Times*, *WIRED, Forbes, ESPN, Money, Newsweek*, *Popular Science*, *Metropolitan Home*, *Vibe*, *Life Magazine, Popular Photography*, *Idea* (Japan), *Photo Magazine* (France), and *Photo District News.* *Id.* at ¶¶12, 13. He has created large-scale permanent installations for Disney/ESPN Zone restaurants and the corporate headquarters of Fox Network and AT&T. *Id.* at ¶11.  His corporate and advertising clientele have also included the Miller Brewing Company, Compaq, American Express, Disney, Dime Bank, and Polygram/Mercury Records. *Id.* at ¶12. His works have earned him various accolades and awards over the years. *Id.* at ¶13.

As a professional photographer, Plaintiff's livelihood depends on the compensation he earns from the photographs he produces.  *Id*. at ¶14. The copyright protections afforded to him under United States copyright law allows him to reliably earn a living as a photographer, and deters would-be infringers from copying and profiting from his works without permission.  *Id*.

At all relevant times, Plaintiff was the creator and exclusive rights holder of a unique photograph (hereinafter the "Copyrighted Image") of former New York Governor Andrew Cuomo. *Id*. at ¶15. A true and correct copy of the Copyrighted Image was appended to the Complaint as Exhibit "A". *Id.* at ¶16 & Exhibit "A" (ECF Doc. 1-1, pp. 1-2) appended thereto. The Copyrighted Image was registered with the United States Copyright Office in 2016 under Registration Number VA 2-007-339.  *Id*. at ¶17; *see also* Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶9, filed herewith, & Exhibit "2" appended thereto.

Defendant THE REPORTER, INC, d/b/a THE NIAGARA REPORTER ("Defendant"), was at all relevant times a New York domestic business corporation with an address in Tonawanda,

New York, and registered with the New York Department of State.  *Id*. at ¶6; Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶4, filed herewith, & Exhibit "1" appended thereto.  Defendant is weekly newspaper, hosted in Niagara Falls, New York, which purports to investigate stories involving alleged public corruption, politics, and local news.  *Id*. at ¶¶18-19.  At all relevant times, Defendant owned and operated the following website on the World Wide Web: https://niagarafallsreporter.com (hereinafter the "Website").  *Id*. at ¶21. Defendant regularly uses advertisements to monetize the content it has on the Website, and at all relevant times the Website and its contents were readily accessible to the general public throughout New York, the United States, and the world.  *Id*. at ¶¶22-23.

On or about June 22, 2021, Plaintiff discovered for the first time that his Copyrighted Image had been copied, uploaded and displayed on the Defendant's Website in connection with an article written by a staff writer for the newspaper, dated October 1, 2020, titled "Cuomo says COVID-Positive Patients in Nursing Homes 'Never Happened".  *Id*. at ¶24.  At no point has Plaintiff ever given Defendant a license or other permission to copy, display, publish or otherwise use the Copyrighted Image on Defendant's Website or on any other platform. *Id*. at ¶¶28-30, 33.  A true and correct screenshot of the Copyrighted Image, as published on Defendant's Website along with the aforementioned October 2020 article, was appended to the Complaint as Exhibit "B".  *Id*. at ¶25 & Exhibit B" (ECF Doc. 1-1, pp. 3-6) appended thereto.

Defendant was at all relevant times the owner and operator of the aforementioned Website and had full control over its contents.  *Id*. at ¶21.  To date, the Copyrighted Image has been continuously displayed on the Website for nearly three years since October 1, 2020 (the date of the aforementioned article that was published alongside the infringed Image).  *Id*. at ¶¶24-25 & Exhibit "B" (ECF Doc. 1-1, pp. 3-6) appended thereto.  The Copyrighted Image continued to

appear on Defendant's Website as of August 7, 2023.   *See* Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶11, filed herewith, & Exhibit "3" appended thereto.

After discovering Defendant's unauthorized use of his Copyrighted Image, and confirming from his records that he had not previously given Defendant a license or other permission to use the image in any manner, Plaintiff attempted to address his grievances with Defendant outside of court.  He did so for over a year before resorting to litigation.  *Id.* at ¶¶12-13.

In November 2021, soon after discovering Defendant's infringement, Plaintiff (through the assistance of counsel) sent cease-and-desist correspondence to Defendant to put Defendant on notice of its past and ongoing infringements of his copyright, as well as to demand reasonable compensation for Defendant's infringement.  *Id.* Over the next 12 months or more, Plaintiff (through counsel) made additional pre-litigation attempts through various means to contact Defendant in hopes of resolving his claims and avoid litigation and the need for judicial intervention; however, those prelitigation efforts were unsuccessful. *Id.* Further efforts to reach Defendant for a resolution following the filing of this action have also been unsuccessful.  *Id.*

### B.  Procedural History

On January 25, 2023, Plaintiff filed the Complaint to initiate this action against Defendant. Complaint (ECF Doc. 1).  Plaintiff's Complaint asserted a claim for past and ongoing copyright infringement under 17 U.S.C. § 101 et seq., and requested monetary damages as well as injunctive relief.  Complaint (ECF Doc. 1), ¶¶32-37.

On March 15 2023, Defendant was timely served with a Summons and copy of the Complaint through the New York Secretary of State in accordance with Fed. R. Civ. P. 4(h)(1)(B) and N.Y. Bus. Corp. Law §§ 305 and 306. *See* Affidavit of Service (ECF Doc. 6).  Rule 4(h) of the Federal Rules of Civil Procedure provides that service on a a corporation may be served by

delivering a copy of the summons and complaint on any "agent authorized by appointment or by law to receive service of process" Fed R. Civ. P. 4(h)(1)(B).

At all relevant times, Defendant was a New York domestic business corporation registered with the New York Department of State. Complaint (ECF Doc. 1), at ¶6; Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶4, filed herewith, & Exhibit "1" appended thereto. Under New York state law, the Secretary of State is statutorily designated as agent for all domestic corporations registered in New York. *See* N.Y. Bus. Corp. Law § 306(a)-(b). Section 306 provides:

> Service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made in the manner provided by clause (i) or (ii) of this subparagraph. Either option of service authorized pursuant to this subparagraph shall be available at no extra cost to the consumer. (i)Personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such corporation shall be complete when the secretary of state is so served . . . .

N.Y. Bus. Corp. Law § 306(b)(1)(i)

Despite proper service and notice of this action, Defendant has not responded to the Complaint or formally entered an appearance in this action. Nor has Defendant or its agents made even informal attempts outside of court to negotiate a potential resolution with Plaintiff for his grievances, and have instead chosen to entirely ignore the instant legal action against it. Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶13, filed herewith.

On June 7, 2023, Plaintiff filed a request for the entry of a certificate of default pursuant to Fed. R. Civ. P. 55(a) and Local Civil Rule 55(a). *See* Rqst. for Entry of Cert. of Dflt. (ECF Docs. 7, 7-1 & 7-2). On June 8, 2023, the Clerk of this Court entered a certificate of default against Defendant. Certificate of Default (ECF Doc. 8).

## II.  DISCUSSION

### A.  Entry of Default

Where a party to a civil action has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter" a default against that party. Fed. R. Civ. P. 55(a). Once default is entered by the Clerk, as it has been here, the party to whom the default was granted must "apply to the court for a default judgment". Fed. R. Civ. P. 55(b)(2); Loc. R. Civ. P. 55(b).

On June 7, 2023, Plaintiff filed a request for the entry of a certificate of default pursuant to Fed. R. Civ. P. 55(a) and Loc. R. Civ. P. 55(a).  *See* Rqst. for Entry of Cert. of Dflt. (ECF Docs. 7, 7-1 & 7-2).  On June 8, 2023, the Clerk of this Court entered a certificate of default against Defendant. Certificate of Default (ECF Doc. 8).

### B.  Effect of Default

"[A] party's default is deemed to constitute a concession of all well-pleaded allegations" so as to establish the defaulting party's liability. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997)(on a motion for a default judgment, the court "deems all the well-pleaded allegations in the pleadings to be admitted"); *Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F.Supp.2d 245, 253 (E.D.N.Y. 2010)("[A] party's default is alt universally deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability.")."If the facts [as stated in the complaint] are well-pleaded, the court assumes their veracity and determines whether such allegations 'plausibly give rise to an entitlement to relief.'" *Montblanc,* 692 F.Supp.2d at 253 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009)).

When a court considers a motion for default judgment, it must "accept[] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981)(citations omitted). "Where a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." *Broadcast Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 153 (W.D.N.Y. 2019); *Tentandtable.com, LLC v. Gorilla Bounce*, LLC, 21-CV-1318-LJV, at *5 (W.D.N.Y.  Mar. 3, 2023)(same). Moreover, "[an unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017)(citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998)).

### C.  Defendant's Liability for Copyright Infringement Has Been Established

Here, Plaintiff has sufficiently alleged in the Complaint facts which support Plaintiff's claim against Defendant for infringement of a duly registered copyright in violation of 17 U.S.C. §106 et seq. "To prevail on a claim of copyright infringement, the Plaintiff must demonstrate both ownership of a valid copyright and infringement of the copyright by the Defendant." *Yurman Design, Inc. v. PAJ. Inc.*, 262 F.3d 101, 108-109 (2d Cir. 2001).

Plaintiff was the creator and at all relevant times exclusive rights holder of the Copyrighted Image that is the subject of this action.  Complaint (ECF Doc. 1), ¶15. A true and correct copy of the Copyrighted Image was appended to the Complaint as Exhibit "A".  *Id.* at ¶16 & Exhibit "A" (ECF Doc. 1-1, pp. 1-2) appended thereto.  The Copyrighted Image was registered with the United States Copyright Office on 06-20-2016 under Registration Number VA 2-007-339.  *Id*. at ¶17; *see also* Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶9, filed herewith, & Exhibit "2" appended thereto.

Where an original work of authorship is registered with the United States Copyright Office, there is a statutory presumption that the copyright is valid. *Yurman Design, Inc.*, 262 F.3d at 109. "A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016)(quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)). Where there has been a default and the allegations in a complaint are accepted as true, a plaintiff's assertion of the existence of a valid copyright is satisfactory, even in the absence of the certificate. *See Renna v. Queens Ledger/Greenpoint Star Inc.*, No. 17-CV-3378, 2019 WL 1061259, at *3 (E.D.N.Y. Feb. 13, 2019)(collecting cases), *report and recommendation* adopted by 2019 WL 1062490 (E.D.N.Y. Mar. 6, 2019).

Here, despite proper service and multiple notice of the instant action, Defendant has failed to appear and deny or dispute Plaintiff's allegation as to his ownership and registration of the Copyrighted Image. Complaint, ¶¶15-17.  Nor has Defendant denied or disputed Plaintiff's allegations as to Defendant's unauthorized use of Plaintiff's Copyrighted Image on Defendant's Website—disseminated and made accessible to a general worldwide public, for Defendant's commercial benefit without a license or other permission from Plaintiff. *Id*. at ¶¶24-30, 33-34. Defendant copied, uploaded and published the Copyrighted Image onto its Website in connection with an article dated October 1, 2020. *Id*. at ¶¶24-25 & Exhibit "B" (ECF Doc. 1-1, pp. 3-6) appended thereto.

Plaintiff first discovered the Copyrighted Image on Defendant's Website in July 2021. Complaint, ¶24.  Copyrighted Image has been continuously displayed on the Website for nearly three years since October 1, 2020 (the date of the aforementioned article that was published alongside the infringed Image). *Id*. at ¶¶24-25 & Exhibit "B" (ECF Doc. 1-1, pp. 3-6) appended

thereto.  The Copyrighted Image continued to appear on Defendant's Website as of August 7, 2023.  Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶11, filed herewith, & Exhibit "3" appended thereto.

Additionally, Defendant has not denied or disputed Plaintiff's allegation that Defendant acted willfully in infringing on Plaintiff's Copyrighted Image. *Id*. at ¶34. Courts in the Second Circuit have held that copyright violations by defaulting defendants may be presumed to be willful. *See, e.g., Am. Auto. Ass'n, Inc. v. AAA Logistics, Inc.*, No. 18-CV-6040-FPG, 2019 WL 1349283, at *9 (W.D.N.Y. Mar. 26, 2019)("[Defendant's default 'gives rise to an inference of willfulness.'")(quoting *Diesel S.P.A. v. Does*, No. 14-CV-4592 (KMW), 2016 WL 96171, at *11 (S.D.N.Y. Jan. 8, 2016)); *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F.Supp.3d 536, 546 (S.D.N.Y. 2015)("Copyright infringement is deemed willful by virtue of a defendant's default."). "[A]n unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017)(citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998)).

**D.  Damages and Other Relief May Be Awarded Without an Inquest.**

Fed. R. Civ. P. 55(b) provides that once liability by default has been established, the court may conduct the inquest to determine damages, without a hearing—based solely upon materials submitted by the plaintiff. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015)(holding that Fed. R. Civ. P. 55(b)(2) "'allows but does not require the district judge to conduct a hearing'")(quoting *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)). A hearing to determine damages on a motion for default judgment is not necessary where affidavits and documentary evidence are sufficient. *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d 230, 234 (2d Cir. 2012)(citing *Action*

*S.A.*, 951 F.2d at 508); *see also De Lage Landen Fin. Servs., Inc. v. Universal Wilde, Inc.*, 2019 WL 4195441, at *3 n.2 (S.D.N.Y. Aug. 15, 2019)(finding that a hearing was not required because plaintiff's sworn declarations were a sufficient basis on which to make a damages calculation), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sept. 3, 2019).

Here, Defendant's default constitutes a concession of Plaintiff's well-pleaded allegations as a matter of law, and establishes Defendant's liability for copyright infringement. Therefore, the Court may determine damages, without a hearing, based on Plaintiff's accompanying Declaration in Support of the Motion for Default Judgment other supporting documents filed herewith, and the pleadings and undisputed allegations that have been filed to date.

## III. RELIEF SOUGHT

Despite proper service of the suit and receiving multiple notices of Plaintiff's claims, Defendant has chosen to entirely ignore Plaintiff's allegations and have refused to even make an appearance in this action in order to make a good-faith attempt to resolve the claims pending before the Court, and avoid the need for this motion and further judicial intervention.  When a court considers a motion for default judgment, it must "accept[]as true all of the factual allegations of the complaint. . . ." *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981)(citations omitted). "Where a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." *Broadcast Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 153 (W.D.N.Y. 2019). "[A]n unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United*

*States v. Silverman*, 15- CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017)(citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998)).

As shown by the undisputed allegations and supporting evidence, Defendant's willful use of Plaintiff's Copyrighted Image on its Website, without a prior license or other authorization from Plaintiff, directly infringed on Plaintiff's exclusive rights as the copyright owner. While Defendant's infringement may have benefited Defendant in promoting the existence and content of its Website, such infringement occurred at Plaintiff's expense. Defendant's infringement not only deprived Plaintiff of licensing fees which he otherwise would have received had Defendant properly obtained the necessary license to use the photo. The manner of Defendant's infringement (displayed on Defendant's Website on the World Wide Web and disseminated to a general worldwide public) and the length of the infringement (continuously for nearly three years as of this writing) has made the Copyrighted Image more widely accessible and susceptible to downstream infringement. As such, Plaintiff requests an entry of default judgment against Defendant and for the following relief.

### A.  Injunctive Relief

Although Plaintiff is also seeking fair compensation for Defendant's past infringement of his copyright, Plaintiff is equally concerned about terminating Defendant's ongoing infringement and preventing future or repeat infringement. Thus, Plaintiff requests, as part of the judgment, a permanent injunction be entered to enjoin Defendant (including its officers, agents, servants, employees, and all persons acting under its permission and authority) from further displaying or otherwise using Plaintiff's Copyrighted Image on its Website (at https://niagarafallsreporter.com), on any other website(s) on the World Wide Web which Defendant owns, operates, or otherwise

has control over, or in any other manner on or off the internet—unless and until Defendant has received a license or other express consent from Plaintiff or Plaintiff's assignee.

Under 17 U.S.C. § 502(a), "any court having jurisdiction . . . may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Am. Auto. Ass'n, Inc. v. AAA Logistics, Inc.*, No. 18-CV-6040-F PG, 2019 WL 1349283, at *4 (W.D.N.Y. Mar. 26, 2019)(internal quotes omitted).  When determining the propriety of granting injunctive relief in a copyright infringement action, courts consider four factors, including whether the plaintiff has shown: (1) that the plaintiff suffered irreparable harm; (2) that it has no adequate remedy at law; (3) that the balance of hardships favors the Plaintiff; and (4) that the public interest would not be disserved by an injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006); *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010). Courts routinely "[grant] injunctive relief in copyright cases where liability is established and there is a threat of continuing infringement." *Conan Props. Int'l LLC v. Sanchez*, No. 17-CV-162, 2018 WL 3869894, at *6 (E.D.N.Y. Aug. 15, 2018)

Here, Plaintiff has demonstrated irreparable injury as result of Defendant's past and ongoing infringement.  As shown by the undisputed and undisputable allegations and supporting evidence presented, Defendant's willful and commercially motivated use of his copyrighted material, without a prior license or other authorization from Plaintiff, directly infringed on his exclusive rights as the copyright owner. While Defendant's infringement benefited Defendant in promoting creating content and promotion for its Website, also generating revenue from ad sales,

such infringement occurred at Plaintiff's expense.  Defendant's infringement not only deprived him of licensing fees which he otherwise would have received had Defendant properly obtained the necessary permission and license to use the image.  The infringement also, by nature of the manner in which it was carried out (continuously displayed on its Website on the World Wide Web and disseminated to a broad audience throughout New York, the country and the world) made the infringed material more easily and widely accessible, and thereby more susceptible to downstream infringement.

Plaintiff is also without an adequate remedy at law. This has been established by Defendant's default and the accompanying inference that Defendant is willing to continue its infringement activity.  *See Am. Auto. Ass'n, Inc. v. AAA Logistics, Inc.*, No. 18-CV-6040-F PG, 2019 WL 1349283, at *8 (W.D.N.Y. Mar. 26, 2019)(concluding that remedies at law are inadequate and injunctive relief therefore appropriate where the "Defendant has shown that is has no interest in cooperating with" the Plaintiff and ceasing the infringement activity); *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 158 (E.D.N.Y. 2013)("A defendant's refusal to appear in [an] action demonstrates the inadequacy of Plaintiff's remedies at law."); *see also Coach, Inc. v. O'Brien*, No. 10 Civ. 6071 (J.P.O.)(J.L.C.), 2012 WL 1255276 at * 17 (S.D.N.Y. April 13, 2012)("Where default is entered, [a] court may infer from a defendant's default that it is willing to, or may continue its infringement.")(internal citations and quotations omitted); *Emi April Music v. Rodriguez*, 691 F.Supp.2d 632, 635 (M.D.N.C. 2010)("Defendant['s] failure to appear in this litigation demonstrates their refusal to acknowledge their legal obligations, makes the threat of continued infringement likely, and underscores the ineffectiveness of a remedy at law.").  The Copyrighted Image was posted to Defendant's Website in connection with an October 2020 article, and continued to remain on the Website as of August

7, 2023—nearly three years later—despite repeated notices to Defendant of Plaintiff's copyright to the image. Monetary damages against Defendant would therefore be an insufficient remedy.

The balance of hardships also tips in Plaintiff's favor because without a permanent injunction, Defendant would be free to continue its infringement of Plaintiff's copyrighted material. Plaintiff is a professional photographer whose works have been shown at various venues, including the Alternative Museum, Queens Museum, Hudson River Museum, Luring Augustine Gallery, the Neuberger Museum and Broadway Windows. Complaint (ECF Doc. 1), at ¶10. His works have also been featured in major publications such as the *New York Post*, *The New York Times*, *WIRED, Forbes, ESPN, Money, Newsweek*, *Popular Science*, *Metropolitan Home*, *Vibe*, *Life Magazine, Popular Photography*, *Idea* (Japan), *Photo Magazine* (France), and *Photo District News. Id.* at ¶¶12, 13. He has created large-scale permanent installations for Disney/ESPN Zone restaurants and the corporate headquarters of Fox Network and AT&T. *Id.* at ¶11. His corporate and advertising clientele have also included the Miller Brewing Company, Compaq, American Express, Disney, Dime Bank, and Polygram/Mercury Records. *Id.* at ¶12. Over the years, his works have earned him various accolades and awards. *Id.* at ¶13.

Plaintiff's livelihood as an individual professional photographer is therefore very dependent on his ability to effectively protect his copyrighted materials. It is for this reason that he formally registered the Copyrighted Image that is the subject of this suit with the United States Copyright Office. Defendant, on the other hand, is a more resourceful commercial entity. With its resources and networks, Defendant has myriad other ways to promote its products and services. Thus, the hardship to Plaintiff in the absence of a permanent injunction for one photograph outweighs any hardship that may be felt by Defendant as result of the issuance of such injunction.

Finally, the public interest would not be disserved by the requested injunction. "The object

14

of copyright law is to promote the store of knowledge available to the public," *Salinger v. Colting*, 607 F.3d 68, 82 (2n Cir. 2010), and issuing an injunction here would "'protect [Plaintiff's] copyrights and help enforce federal law.'" *BBY Sols., Inc. v. Schwartz*, No. CV 11-0947 (ADS) (ETB), 2011 U.S. Dist. LEXIS 151585 at *10 (E.D.N.Y. Nov. 17, 2011)(quoting *Dish Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 602 (W.D.N.Y. 2011)). "Anti-infringement injunctions serve the public interest by preventing customer confusion and allowing a more efficient marketplace to operate by virtue of the availability to consumers of a clear identification of products, services and vendors." *Stark Carpet Corp.* 954 F. Supp. 2d at 164.

### B. Statutory Damages

The Copyright Act provides that a plaintiff, having established the infringement of its copyrighted works, may elect to receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" for each work. 17 U.S.C. §504(c)(1). Furthermore, where the plaintiff demonstrates "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" per work. 17 U.S.C. §504(c)(2). Courts in this district and throughout the Second Circuit have held that copyright violations by defaulting defendants may be presumed to be willful. *See, e.g., Am. Auto. Ass'n, Inc. v. AAA Logistics, Inc.*, No. 18-CV-6040-F PG, 2019 WL 1349283, at *9 (W.D.N.Y. Mar. 26, 2019)("[Defendant's default 'gives rise to an inference of willfulness.'")(quoting *Diesel S.P.A. v. Does*, No. 14-CV-4592 (KMW), 2016 WL 96171, at *11 (S.D.N.Y. Jan. 8, 2016)); *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F.Supp.3d 536, 546 (S.D.N.Y. 2015)("Copyright infringement is deemed willful by virtue of a defendant's default."). "[A]n unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United*

*States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017)(citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998)).

A plaintiff in a copyright infringement action "may elect statutory damages 'regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits." *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1114 (2d Cir. 1986). Where the amount of damages cannot be easily determined, and the plaintiff elects to receive statutory damages in lieu of actual damages, "[t]he district court has 'wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Id.* at 116; *see also Lauratex Textile corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 733 (S.D.N.Y 1981)("The broad discretionary power given to courts to make [an award of statutory damages] serves the dual purposes of the Copyright Act: to compensate copyright owners and to provide a deterrent for would-be infringers."); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)("Even for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy [of discouraging wrongful conduct].").

Courts in the Second Circuit aim to deter future violations and take deterrence into account by awarding damages in amounts that are well above the price of licensing fees for comparable works. *See Realsongs Universal Music Corp. v. 3A N Park Ave. Rest. Corp.*, 749 F. Supp.2d 81, 87 (E.D.N.Y. 2010). In cases involving unlicensed public performances of copyrighted music, courts have held that, in order to put such infringers "on notice that it costs less to obey the copyright laws than to violate," *Rodgers v. Eighty Four Lumber Co*., 623 F.Supp. 889, 892 (W.D. Pa. 1985)(quotation omitted), a statutory damage award should significantly exceed the amount of unpaid license fees. *See, e.g*., *Broadcast Music, Inc. v. Star Amusements*, Inc., 44 F.3d 485, 488

(7th Cir. 1995)(upholding award of $140,000 in statutory damages where defendants avoided paying about $75,000 in copyright registration fees).

Here, after discovering Defendant's unauthorized use of his unique Copyrighted Image, and confirming from his records that he had not previously given Defendant a license or other permission to use the Copyrighted Image in any manner, Plaintiff attempted to address his grievances with Defendant outside of court. He did so for over a year before resorting to litigation. *See* Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶¶12-13. In November 2021, Plaintiff (through the assistance of counsel) sent cease-and-desist correspondence to Defendant to put Defendant on notice of its past and ongoing infringements of his copyright, as well as to demand reasonable compensation for Defendant's infringement. *Id.* Over the next 12 months or more, Plaintiff (through counsel) made additional pre-litigation attempts through various means to contact Defendant in hopes of resolving his claims and avoid litigation and the need for judicial intervention; however, those pre-litigation efforts were unsuccessful, as were similar attempts following the filing of this action. *Id.*

Plaintiff has in the recent past charged rates ranging from $500 to $1200 for comparable photographs that were licensed for editorial purposes. *Id.* at ¶15. However, the rates charged for licenses for commercial uses of a copyrighted image—such was the case in this matter—are typically higher than those charged for editorial uses. *Id.* Using the high end of Plaintiff's editorial licensing rate ($1200), and applying a multiplier of five—which is within the normal range of multipliers courts have applied in similar cases in awarding statutory damages for copyright infringement—Plaintiff submits that an award of **$6,000** ($1200 x 5) would not be an unreasonable amount for statutory damages for his copyright infringement claim.

The proposed multiplier of five is justified for a variety of reasons. First, it is within the

17

range that courts have applied in awarding statutory damages in similar cases.  As has been observed, "courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid." *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 374-75 (S.D.N.Y. 2019). Where it has been established that the infringement was willful, courts have awarded statutory damages at the high end of that multiplier range. *See, e.g., WP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395 (S.D.N.Y. 2016)(holding that the plaintiff was entitled to statutory damages an amount equal to five times the licensing fee for the image due to the of the degree of the defendant's willfulness and the policy need to deter future infringement). Courts in the Second Circuit aim to deter future violations and take deterrence into account by awarding damages in amounts that are well above the price of licensing fees for comparable works. *See Realsongs Universal Music Corp. v. 3A N Park Ave. Rest. Corp.*, 749 F. Supp.2d 81, 87 (E.D.N.Y. 2010).

Secondly, courts in the Second Circuit have held that copyright violations by defaulting defendants may be presumed to be willful. *See Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475, 2020 WL 4738242, at *4 (E.D.N.Y. Aug. 14, 2020); *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F.Supp.3d 536, 546 (S.D.N.Y. 2015)("Copyright infringement is deemed willful by virtue of a defendant's default.")(citing *All-Star Mktg. Grp., LLC v. Media Brans Co.*, 775 F.Supp.2d 613, 621-22 (S.D.N.Y. 2011)). "[A]n unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017)(citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998)).

The proposed multiplier is also appropriate in light of the length of the infringement. The Copyrighted Image was displayed on the Website in connection with an article dated October 20, 2020. The Copyrighted Image has remained on the Defendant's Website nearly three years later, as of August 7, 2023. *See* Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶11, field herewith, & Exhibit "3" appended thereto.

The requested statutory damages amount is also reasonable in light of Plaintiff's undisputed background. Plaintiff is an established professional photographer whose works have been shown at various venues, including the Alternative Museum, Queens Museum, Hudson River Museum, Luring Augustine Gallery, the Neuberger Museum and Broadway Windows. Complaint (ECF Doc. 1), at ¶10. His works have also been featured in top publications such as the *New York Post*, *The New York Times*, *WIRED, Forbes, ESPN, Money, Newsweek*, *Popular Science*, *Metropolitan Home*, *Vibe*, *Life Magazine, Popular Photography*, *Idea* (Japan), *Photo Magazine* (France), and *Photo District News*. *Id.* at ¶¶12, 13. He has created large-scale permanent installations for Disney/ESPN Zone restaurants and the corporate headquarters of Fox Network and AT&T. *Id.* at ¶11. His corporate and advertising clientele have also included the Miller Brewing Company, Compaq, American Express, Disney, Dime Bank, and Polygram/Mercury Records. *Id.* at ¶12. His works have earned him various accolades and awards over the years. *Id.* at ¶13.

Finally, even with a multiplier at the higher end of the range that courts in the Second Circuit routinely apply, the statutory damages amount requested (**$6,000**) is still substantially below the statutory maximum that may be awarded for willful infringement, and also far below the maximum amount that may be awarded in cases of *non-willful* infringement. 17 U.S.C.

§504(c)(1)-(2)(permitting statutory damages of up to $150,000 for willful infringement, and up to $30,000 for non-willful infringement).

### C.  Costs and Attorney's Fees

*(i) Costs*

Pursuant to §505 of the Copyright Act, a court "may allow the recovery of full costs by or against any party". 17 U.S.C. §505. Likewise, Fed. R. Civ. P. 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Courts in this district have recognized that costs are regularly awarded to plaintiffs who prevail in copyright infringement actions based on a defendant's unauthorized use of copyrighted material. *See Broad. Music, Inc. v. P.A.M.D.H. Enters.*, No. 13-CV-2255, 2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. June 19, 2014).

In this action, the Plaintiff has incurred costs in the total amount of **$732**—including $402 for the filing fee and $330 for the costs of service of the Summons and Complaint on the Defendant (including the $40 statutory fee paid to the New York Secretary of State).  *See* Decl. in Sppt. of Mtn. for Dflt. Jdgmt, ¶18, filed herewith, & Exhibit "4" appended thereto.  Plaintiff therefore requests that judgment include the total costs of **$732** he has incurred.

*(ii) Attorney's Fees*

Section 505 of the Copyright Act also allows for the recovery of reasonable attorney's fees by a prevailing party. 17 U.S.C. §505. Under Fed. R. Civ. P. 54(d), a request for attorney's fees may be may up to 14 days after the entry of judgment". Fed. R. Civ. P. 54(d)(2)(B)(i). As such, Plaintiff does not seek attorney's fees at this time as part of this motion for default judgment, but reserves his right to do so if and following the entry of default judgment in Plaintiff's favor, in accordance with Fed. R. Civ. P. 54(d).

**D. Post-Judgment Interest**

Finally, Plaintiff requests post-judgment interest pursuant to 28 U.S.C. § 1961.  Under 28 U.S.C. § 1961(a), "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017)(internal quotation marks, citation and alteration omitted). Courts do not have judicial discretion to deny post-judgment interest in connection with a civil judgment. *Id*. (citation omitted).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant Plaintiff's instant motion and enter judgment against the Defendant, including:

1)  A **permanent injunction** to enjoin and restrain Defendant THE REPORTER, INC, d/b/a THE NIAGARA REPORTER (including its officers, agents, servants, employees, and all persons acting under its permission and authority) from further displaying or otherwise using Plaintiff's Copyrighted Image on Defendant's current website (at https://niagarafallsreporter.com), on any other website(s) on the World Wide Web which Defendant owns, operates, or otherwise has control over, or in any other manner on or off the internet—unless and until Defendant has received a license or other express consent from Plaintiff or Plaintiff's assignee.

2)  Statutory damages of **$6,000** for Plaintiff's copyright infringement claim under 17 U.S.C. §504(c).

3) Costs in the total amount of **$732**;

4) **Post-judgment interests** pursuant to 28 U.S.C. § 1961;

5) Such other relief as the Court deems just and proper.


Dated: August 9, 2023                    Respectfully submitted,

                                         /s/ Rayminh L. Ngo
                                         Rayminh L. Ngo, Esq.
                                         **HIGBEE & ASSOCIATES** *(Of Counsel)*
                                         1504 Brookhollow Dr., Ste 112
                                         Santa Ana, CA 92705-5418
                                         (305) 764-9262 (Ph)
                                         (714) 597-6729 (Fax)
                                         rngo@higbeeassociates.com
                                         *Attorney for Plaintiff*